*1020 |,ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Glenda M. August, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
In May 2004, Melissa Gray hired respondent to represent her minor children in a wrongful death claim resulting from the death of their father in a May 4, 2004 automobile accident. On May' 19, 2005, respondent filed a wrongful death lawsuit on her clients’ behalf. However, she did not timely file the lawsuit within the one-year prescriptive period applicable to *1021 wrongful death claims.[1] Respondent also failed to notify Ms. Gray that the claim had prescribed. The defendants filed an exception of prescription but failed to fix the matter for a hearing. Thereafter, respondent took no action, beyond an unsuccessful attempt to conduct discovery, to move the court case forward.
In June 2006, Ms. Gray contacted attorney Joseph Kopfler for assistance, claiming she could not get any information from respondent. Mr. Kopfler contacted |2the court clerk’s office and learned of the prescription issue. Thereafter, Ms. Gray retained Mr. Kopfler to file a malpractice lawsuit against respondent, which was filed in December 2006. Notwithstanding the apparent conflict of interest created by Ms. Gray’s malpractice lawsuit, respondent did not withdraw from the representation of Ms. Gray and her children in the wrongful death lawsuit. Respondent also did not contact Ms. Gray until May 2008 to determine if she wanted respondent to continue with the representation.[2]
DISCIPLINARY PROCEEDINGS
Following its investigation of a complaint filed by Mr. Kopfler, the ODC filed one count of formal charges against respondent, alleging she violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.7 (conflict of interest), 1.8 (conflict of interest), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Respondent answered the formal charges, denying any misconduct. The matter then proceeded to a formal hearing on the merits.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made the following factual findings:
1. Ms. Gray retained respondent in May 2004 to investigate and pursue a wrongful death claim on behalf of Ms. Gray’s children arising out of the May 4, 2004 death of Derrick Green in an automobile accident;
| ?2. Respondent recognized the one-year time limit for filing a wrongful death lawsuit based upon negligence and entered that time limit in three separate alert systems within her office;
3. Although respondent knew the accident date was May 4, 2004, the date of May 26, 2004 was incorrectly entered into her office alert systems;
4. Respondent began the representation with proceedings to establish the paternity of Ms. Gray’s children and was successful in obtaining a judgment in April 2005 recognizing Mr. Green as the father;
5. After obtaining the paternity judgment, respondent began preparing the wrongful death lawsuit based upon negligence but did not file the lawsuit *1022 by May 4, 2005, the one-year anniversary of the accident;
6. Respondent discovered the error within her office tickler and backup systems after May 4, 2005 but did not disclose, at that time, the error and her failure to timely file the wrongful death lawsuit based on negligence to Ms. Gray;
7. Respondent did not disclose her error and her accompanying responsibility to Ms. Gray until after Mr. Kopfler made a legal demand upon respondent;
8. Upon discovering her error in not timely filing the wrongful death lawsuit, respondent did research and discovered an alternative theory of recovery of damages resulting from a crime of violence, which has a two-year prescription period;
9. On May 19, 2005, respondent filed a wrongful death lawsuit based on this alternative theory. An exception of prescription was filed in the lawsuit, but it has not been resolved;
10. Ms. Gray admits meeting with respondent and receiving a copy of the lawsuit, but she denies discussing the prescription issue with respondent;
|411. Respondent contends she met with Ms. Gray and discussed the issues thoroughly. However, respondent could not offer any documentary proof of the meeting or discussion, and a discrepancy exists in respondent’s statements as to the date of the meeting;
12.Respondent did not advise Ms. Gray in writing of the prescription date, her failure to timely file the lawsuit, and the consequences of her failure. She also did not advise Ms. Gray in writing to seek the advice of other counsel regarding these issues;
13. Even after Mr. Kopfler made a legal demand for malpractice and filed a malpractice lawsuit, respondent did not withdraw from her representation of Ms. Gray in the wrongful death lawsuit;
14. Mr. Kopfler instructed respondent to continue to represent Ms. Gray in the wrongful death lawsuit and to expedite the resolution of the exception of prescription;
15. Mr. Kopfler disputed the alternative theory offered by respondent in the wrongful death lawsuit; and
16. As of the date of the hearing on the formal charges, respondent had undertaken efforts in pursuit of the wrongful death lawsuit but had not set the exception of prescription for hearing or sought to schedule a trial date.
Based on these facts, the committee determined the following were established by clear and convincing evidence:
1. Respondent failed to timely file the wrongful death lawsuit, causing the loss of causes of action, rights, and legal issues;
2. Respondent failed to advise Ms. Gray, in writing or otherwise, of her failure to timely file the wrongful death lawsuit and the consequences of that failure;
153. Respondent failed to advise Ms. Gray, in writing or otherwise, to seek independent legal advice regarding her failure to timely file the wrongful death lawsuit;
4. Respondent failed to advise Ms. Gray, in writing or otherwise, to seek independent legal advice regarding her recommendation to file suit based on wrongful death as a result of a crime of violence when she had allowed the negligence claim to prescribe;
*1023 5. Respondent failed to advise Ms. Gray, in writing or otherwise, as to the difference between a wrongful death claim based on negligence and one based on a crime of violence;
6. Respondent failed to recognize the conflict of interest between representing Ms. Gray and her children in the wrongful death lawsuit and being the defendant in Ms. Gray’s malpractice lawsuit;
7. Respondent failed to withdraw from the representation of Ms. Gray and her children or obtain a written waiver from Ms. Gray after she sought advice from and consulted with independent legal counsel; and
8. Respondent cooperated fully with the ODC and the committee in this matter.
In light of the above findings, the committee determined respondent knowingly and intentionally violated Rules 1.3, 1.4, 1.7, and 1.8 of the Rules of Professional Conduct. However, the committee found respondent did not violate Rule 8.4(c). After considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the baseline sanction is suspension.
The committee found the following aggravating factors present: prior disciplinary offenses,[3] refusal to acknowledge the wrongful nature of the conduct, |,;vulnerability of the victim, and substantial experience in the practice of law (admitted 1985). In mitigation, the committee found the absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and remoteness of prior offenses. Furthermore, the committee found respondent made it clear, in writing and in her testimony, that she would be personally responsible for any loss occasioned by her failure to timely institute the wrongful death lawsuit.
Under these circumstances, the committee recommended respondent be suspended from the practice of law for two years, fully deferred, subject to two years of supervised probation with several conditions.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation. However, in its brief to the disciplinary board, the ODC indicated its objection to the committee’s failure to find a violation of Rule 8.4(c).

Disciplinary Board Recommendation

After review, the disciplinary board determined the hearing committee’s factual findings do not appear to be manifestly erroneous. Based on the factual findings and the record, the board determined respondent violated Rules 1.3, 1.4, 1.7, and 8.4(c) of the Rules of Professional Conduct. The board further found the record does not support a violation of Rule 1.8.[4]
Specifically, the board found respondent negligently allowed Ms. Gray’s wrongful death claim to prescribe, then knowingly failed to pursue the wrongful death lawsuit she filed under an alternative theory. Respondent also failed to inform Ms. Gray that her claim had prescribed and failed to adequately advise Ms. Gray |7about the alternative theory and its potential to limit the recovery available to her. The board further found respondent engaged in a conflict of interest, reasoning that she had an interest in delaying the hearing on the exception of prescription because a dismissal of the wrongful death lawsuit based *1024 on prescription would adversely impact her interests in the malpractice lawsuit. Finally, the facts indicate respondent intentionally failed to inform Ms. Gray of the prescription issue, thereby engaging in dishonest and deceitful conduct.
The board further determined respondent violated duties owed to her client, causing significant harm because it appears Ms. Gray and her children may have lost their ability to recover for damages caused by Mr. Green’s death. The board determined respondent acted negligently in allowing the claim to prescribe but, thereafter, acted knowingly and intentionally. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction is suspension. Additionally, the board agreed with the aggravating and mitigating factors found by the committee.
In light of the above findings and this court’s prior jurisprudence involving similar misconduct, the board recommended respondent be suspended from the practice of law for two years, with all but sixty days deferred, followed by one year of supervised probation with the following conditions:
1. Respondent shall comply with the requests of a practice monitor appointed to periodically review her office procedures and practices;
2. Respondent shall attend the Louisiana State Bar Association’s Ethics School during the probationary period and provide proof of the attendance to the ODC; and
|⅜3. Respondent shall refrain from engaging in additional violations of the Rules of Professional Conduct.
Three board members dissented, indicating they would impose a harsher sanction upon respondent.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
The genesis of the misconduct in this case is respondent’s negligent failure to timely file a wrongful death lawsuit on behalf of her client. Standing alone, these actions might be considered legal malpractice. As we explained in In re: Brown, 07-0995 at pp. 7-8 (La.10/17/07), 967 So.2d 482, 486, acts of legal malpractice do not necessarily constitute ethical misconduct:
The question of when ordinary legal malpractice becomes an ethical violation is somewhat unclear. Strictly speaking, virtually any time an attorney allows his client’s case to prescribe or to become abandoned, it could be said the attorney lacks competence in violation of Rule 1.1 and failed to act with diligence in violation of Rule 1.3. However, as a practical matter, disciplinary sanctions are not always appropriate in every instance in which an attorney commits minor violations of the Rules of Professional Conduct. In re: Hartley, 03-2828 (La.4/2/04), 869 So.2d 799. When significant discipline has been imposed in this context, the cases typically involve situations in which the malpractice is combined with additional misconduct, such as where the attorney acts with |9deceit or misrepresents facts in an effort to conceal the malpractice from the client. See, e.g., In re: Blanson, 05-2561 *1025 (La.6/2/06), 930 So.2d 943 (attorney suspended for three years for allowing a suit to become abandoned and falsely assuring the client the suit was still pending when it had been dismissed).
Applying the reasoning of Brown, we now turn to the record to determine whether respondent committed any actions in addition to the malpractice which might serve as a basis for sanctions. In this regard, we find it significant that respondent became aware of her calendaring error shortly after it occurred. Instead of advising her client of this fact, respondent, without obtaining the consent or approval of her client, elected to file the suit under an alternative theory of prescription. Without passing on the merits of this alternative theory, we find respondent’s failure to communicate with her client prior to filing the suit deprived her client of the opportunity to determine whether respondent was using the proper means to accomplish the objectives of the representation. See Rule 1.4(a)(2) of the Rules of Professional Conduct (providing a lawyer shall “reasonably consult with the client about the means by which the client’s objectives are to be accomplished”). Moreover, even after the suit was filed, respondent failed to communicate with her client for an extended period of time, thereby failing to keep the client “reasonably informed about the status of the matter” as required by Rule 1.4(a)(3). Finally, when her client obtained the services of another attorney and sued her for malpractice, respondent did not recognize the existence of a conflict of interest, nor did she take appropriate steps to address the conflict as required by Rule 1.7.
Under these circumstances, we find the charges in this case are not based on respondent’s legal malpractice standing alone, but are instead based on acts of misconduct committed in conjunction with the malpractice. This misconduct | inconstitutes a violation of the Rules of Professional Conduct, as found by the board, and warrants discipline.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent violated duties owed to her client and the legal profession. She acted negligently in failing to timely file the wrongful death lawsuit. Thereafter, she acted knowingly, if not intentionally, and caused potential and actual harm to her client. The baseline sanction for this type of misconduct is a suspension.
The record supports the following aggravating factors: prior disciplinary offenses, a dishonest or selfish motive, and substantial experience in the practice of law. The mitigating factors of full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings and remoteness of prior offenses are also present.
Turning to the issue of an appropriate sanction, a survey of our jurisprudence indicates the sanctions imposed for acts of legal malpractice combined with other misconduct, such as misrepresentation or failure to communicate, generally range from' a public reprimand to periods of suspen *1026 sion, all or part of which may be | ^deferred.[5] The board’s recommendation of a two-year suspension, with all but sixty days deferred, is consistent with this jurisprudence. Accordingly, we will accept the board’s recommendation.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Glenda M. August, Louisiana Bar Roll number 14924, be and she hereby is suspended from the practice of law for two years. All but sixty days of this suspension shall be deferred, subject to respondent’s successful completion of a one-year period of supervised probation governed by the conditions enumerated by the disciplinary board. The probationary period shall commence from the date respondent, the ODC, and the probation monitor execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension execu-tory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, |12with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. Respondent did not timely file the lawsuit because her secretary calendared the prescription date incorrectly. When respondent discovered the error, she filed the lawsuit under the alternative theory that the at-fault driver committed manslaughter, a crime of violence, which allows for a two-year prescriptive period instead of the usual one-year prescriptive period. The at-fault driver was charged with negligent homicide and found guilty of same on December 21, 2007.

. In her post-hearing memorandum filed with the disciplinary board on November 4, 2009, respondent indicated that Ms. Gray discharged her following the formal hearing in this matter.

. In November 1990, respondent was twice admonished for failing to cooperate with the ODC in two separate investigations.

. At oral argument before the board, the ODC conceded the record does not support a violation of Rule 1.8.

. See, e.g., In re: Dixon, 08-1618 (La.12/2/08), 996 So.2d 1029 (one year and one day suspension, with all but six months deferred, followed by a period of probation, imposed upon an attorney who negligently failed to serve a petition and altered the original petition after it was filed with the trial court, but thereafter intentionally provided false information to the ODC); In re: Heisler, 06-1202 (La.11/3/06), 941 So.2d 20 (an attorney neglected a client's legal matter and tried to conceal his malpractice through a simulated settlement, which he funded himself; one-year suspension imposed, which was fully deferred subject to probation); In re: Jackson, 02-2764 (La.4/9/03), 842 So.2d 359 (six-month suspension, with three months deferred, followed by probation, imposed upon an attorney who allowed a client’s claim to prescribe; the respondent had previously been admonished for "strikingly similar conduct”); In re: Dunn, 98-0535 (La.6/5/98), 713 So.2d 461 (six-month suspension, fully deferred, subject to probation, imposed upon an attorney who neglected his client's case, causing it to be dismissed as abandoned, and settled his malpractice with the client without advising her to seek independent legal counsel), and In re: Thompson, 98-0079 (La.5/8/98), 712 So.2d 72 (one-year suspension, fully deferred, subject to probation, imposed upon an attorney who allowed his client's claim to prescribe and offered to settle his malpractice with the client without advising her to seek independent legal counsel).