PER CURIAM.
11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Jalila E. Bullock, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.[1]
UNDERLYING FACTS .
In July 2011, the three-year old daughter of Geron Trenise Jones was struck and killed by a speeding motorcycle operated by Shawn Dejean. The police report of the accident indicated that Mr. Dejean was insured at the time of the tragic accident.
Following her daughter’s death, Ms. Jones retained respondent to represent her in a wrongful death claim against Mr. Dejean and his insurer. Respondent’s communications with Ms. Jones during the representation were sporadic. At some point.during this time, respondent determined that Mr. Dejean did not have a valid insurance policy in effect on the date of the accident, and that it was highly unlikely Mr. Dejean would be able to respond financially to any damage award entered against him. Nevertheless, respondent did not disclose.the.absence of an insurance policy to Ms. Jones. She also did not disclose to Ms. Jones that she had |2not filed a lawsuit to interrupt prescription, or that she had declined to pursue the matter further.
More than one year after the accident, Ms. Jones was able to reestablish communications with respondent. Respondent then wire transferred funds from her own personal account to Ms. Jones. After these events, respondent ignored Ms. Jones’ demands for her file, and left Ms. Jones in the dark regarding the pendency *988 of the litigation that she was to have filed on her behalf.
DISCIPLINARY PROCEEDINGS
In June 2013, Ms. Jones filed a complaint against respondent with the ODC. In August 2014, the ODC filed formal charges against respondent, alleging that her conduct as set forth above violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Respondent answered the formal charges and denied any misconduct.

Formal Hearing

This matter proceeded to a formal hearing conducted by the hearing committee in April 2015. Prior to the hearing, the parties entered into a joint stipulation of facts, in which respondent admitted the underlying facts set forth above. The parties also stipulated to the following issues:
1. Respondent’s conduct reflects violations of Rules 1.3, 1.4 and 8.4(c) of the Rules of Professional Conduct.
2. Respondent’s conduct reflects violations of duties owed to a client; there is little financial harm by respondent’s conduct inasmuch as the defendant | adriver was uninsured and by all -accounts unable to respond in damages personally. However, had the defendant been insured, the potential for harm would have been significant and amounting to the face value of the insurance policy.
3. The baseline sanction is suspension under the ABA’s Standards for Imposing Lawyer Sanctions.
4. Stipulated aggravating factors include (a) vulnerability of the victim, and (b) substantial experience in the practice of law (admitted 2003).
5. Stipulated mitigating factors include (a) absence of a prior disciplinary record, (b) timely good faith effort to make restitution or to rectify the consequences of the misconduct, (c) full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, (d) character and reputation, and (e) remorse.
The ODC called Ms. Jones to testify at the hearing. Respondent testified on her own behalf and on cross-examination by the ODC.

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee made factual findings, including the following:
Ms. Jones testified that she signed a contingent fee agreement with respondent a few days after her daughter’s accident. The agreement called for respondent to receive a one-third contingency fee. A copy of the agreement was never provided to Ms. Jones.
A short time after the contingent fee agreement was signed, Ms. Jones reached out to respondent for information about her case and was told that the insurance company was giving respondent the “runaround.” Respondent said the | ¿insurer “sent her a check, but the check was wrong, and she had to send it back to get another one reissued.”
A few weeks later, respondent reiterated this story that there was a problem with the check. She informed Ms. Jones that she would give her “something out of [her] personal account” until the replacement check arrived. At this point respondent *989 wired Ms. Jones $7,500, with the promise that another $7,500 would be wired at a later date. Respondent testified that she felt sorry for Ms. Jones and felt that she “shouldn’t have to go through this.” Ms. Jones did not receive the second payment, nor did she receive any documentation about the filing of a lawsuit in the matter. Ms. Jones began asking repeatedly for a copy of her file or a copy of the lawsuit supposedly filed on her behalf, neither of which was forthcoming. A copy of the file has never been given to Ms. Jones, even as of the date of the hearing in this matter, despite multiple requests for same.
Shortly after these events transpired, Ms. Jones’ stepfather went to the courthouse in an attempt to secure a copy of the lawsuit. He found no evidence that any lawsuit had been filed. After Ms. Jones filed a complaint with the ODC, she learned that in fact, no lawsuit was filed. Ms. Jones obtained this information only upon receiving the response to her complaint prepared by respondent’s counsel. As a further result of the ODC’s investigation into this matter, it was determined that there was never an insurance check issued, as there was no liability insurance on the defendant driver who caused the death of Ms. Jones’ child. It was at this time, long after the filing of the original complaint, that Ms. Jones was informed of the malpractice and was advised to contact another lawyer.
Respondent also offered testimony in her defense. She admitted that she did not communicate with Ms. Jones as well as she should have. For example, she never communicated the fact that the defendant driver did not have insurance. Respondent also failed to file a lawsuit in a timely fashion, and failed to disclose |Bthis fact to Ms. Jones. In addition, respondent acknowledged that the file was not handled well. No research was done as to other responsible parties or sources of recovery. Respondent testified- that she felt bad about Ms. Jones’ situation and the fact that nothing could be done. It was for this reason that she made the transfer of $7,500 to Ms. Jones.
Respondent testified that as of the hearing date she still had not turned over the file to Ms. Jones, ostensibly for the reason that she believed no • one wanted it any more, or that it would be inappropriate to do so.
The committee noted that it was disturbed by respondent’s' testimony concerning the' legal malpractice suit filed against her by Ms. Jones. Respondent filed pleadings in the malpractice case alleging that- Ms. Jones’ claim was barred by prescription, which the committee felt allowed respondent to benefit from, her misconduct. Although respondent testified that it was.“never [her] intention to put [Ms. Jones] in a position where she couldn’t seek any type of recourse against me at all,” when asked whether she had filed a pleading waiving prescription and allowing the malpractice claim to proceed, respondent said that she had not. The following exchange then occurred:
Q. In fact, what you’ve done is you plead prescription as a bar against her claim, haven’t you?
A. Well, I had to. I had to.
Based on these factual findings, the committee found respondent violated the Rules of Professional Conduct as charged in the formal charges! There is no question that respondent failed to act diligently in handling Ms. Jones’ case. She did- no research into alternate sources of recovery, if any.1 She did not look for available witnesses. She did not investigate alternate theories of responsibility. Respondent failed to provide a copy of the contract evidencing the attorney-client I «relationship and failed to return the *990 client’s file when requested. Respondent let the matter prescribe without the filing of a lawsuit.
These facts could have constituted ordinary legal malpractice, had respondent admitted them to her client. Instead, she chose to do nothing at best and at worst to cover her mistakes with a series of actions that bring this matter into the realm of a disciplinary proceeding: she refused to return the client’s file even as of the date of the hearing, and she attempted to pay the client for her misconduct through a personal payment of $7,500 without advising the. client of her negligence and without advising the client to seek further counsel.
The committee found respondent acted knowingly, causing both actual and potential harm. The applicable baseline sanction is suspension. The committee'did not discuss aggravating or mitigating factors.
Under these circumstances, the committee concluded the appropriate sanction in this case is a one year and one day suspension from the practice of law.
The ODC did not object to the hearing committee’s recommendation. Respondent filed a brief with the disciplinary board objecting to the sanction recommended by the committee. She asserted that the appropriate sanction in this case is a fully deferred one-year suspension.

Disciplinary Board Recommendation

After, review, the disciplinary board determined that the hearing committee’s findings of fact are supported by the. record and do not appear to be manifestly erroneous. Respondent stipulated to a majority of the factual allegations in the formal charges. Effect must be given to these stipulations unless they are withdrawn. In re: Torry, 10-0837 (La.10/19/10), 48 So.3d 1038. In addition to the factual allegations, respondent stipulated to -violating Rules 1.3, 1.4, and 8.4(c). Likewise, these stipulations must be given effect. Id. Respondent did not stipulate 17to violating Rule 8.4(a), but the board found that by violating the stipulated rules, she violated Rule 8.4(a).
The board determined respondent knowingly, if not intentionally, violated duties owed to her client. With regard to the harm caused by respondent’s misconduct, the parties agree there was little actual financial harm to Ms. Jones because the driver of the motorcycle was uninsured. Thus, there does appear to be little actual financial harm to Ms. Jones. However, the board found that respondent’s misconduct caused other actual harm. Ms. Jones lost her right of action against the tortfea-sor because respondent allowed the matter to prescribe. Furthermore, respondent’s failure to timely notify Ms. Jones of her malpractice has potentially caused the malpractice claim to prescribe as well. As noted by the hearing committee, respondent has pleaded prescription in the legal malpractice case filed by Ms. Jones. Respondent’s misconduct also had and has the potential to cause significant harm. If the tortfeasor was insured, allowing the matter to prescribe would have caused significant harm. Likewise, if the malpractice matter is dismissed as prescribed, Ms. Jones will lose her last opportunity for recovery for her loss. The applicable baseline sanction in this matter is suspension.
. The board adopted the aggravating and mitigating factors stipulated to by the parties.[2] The board also recognized the addi *991 tional aggravating factor of a dishonest or selfish motive, reasoning that respondent’s failure to timely disclose the malpractice issue to Ms. Jones has potentially caused her client to lose that right of action.
Turning to' the issue of an appropriate sanction, the board noted that this court has imposed sanctions ranging from fully deferred suspensions to six-month factual suspensions for allowing claims to prescribe or become abandoned and then failing to inform and/or misleading the client about the issue. The board concluded that this case falls on the higher end of the sanction range. First, respondent acted knowingly, if not intentionally, when she failed to inform Ms.,Jones about the prescription and about the tortfeasor’s lack of insurance. Ms. Jones did not become aware of these issues until after she filed a complaint with the ODC. Second, respondent intentionally misled Ms. Jones about the status of the matter when she stated that there was an issue with the insurance company check. Third, respondent’s significant delay in notifying Ms. Jones of her malpractice has potentially caused Ms. Jones’ right to pursue a legal malpractice action to prescribe. Accordingly, the one year and one day suspension recommended by the committee appears to be appropriate. The board commented that it had difficulty in view of the facts of this case in finding an overwhelming reason for a downward departure, but it concluded that given the case law and the mitigating factors present in this matter, six months of the suspension should be deferred.
Based on this reasoning, the board recommended that respondent be suspended from the practice of law for one year and one day, with six months deferred, subject to the condition that additional misconduct may be grounds for making the deferred portion of the suspension executory. The board further recommended respondent be assessed with the costs and expenses-of this proceeding. ■ >
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an | independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the .manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The formal charges in ' this case allege that respondent, neglected- her client’s legal matter and allowéd it to prescribe, failed to communicate with her client and. failed to timely disclose her malpractice, and misled her client regarding the status of the case.''The parties subsequently stipulated to the truthfulness of these facts. Accordingly, respondent’s conduct rises above ordinary legal malpractice, and discipline is appropriate. See In re: Brown, 07-0995 (La.10/17/07), 967 So.2d 482.[3]
*992 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain hnhigh standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent and the ODC agree that the imposition of discipline is warranted; however, they disagree on the sanction to be imposed. Respondent argues that the appropriate sanction is a fully deferred one-year suspension. The ODC contends that respondent should be suspended for one year and one day, with six months deferred. The disciplinary board agreed with the ODC and recommended a one year and one day suspension, with six months deferred, subject to the condition that additional misconduct may be grounds for making the deferred portion of the suspension executory.
' Considering the aggravating and mitigating factors stipulated to by the parties (as amended by the board), and the prior jurisprudence of the court discussing similar misconduct,[4] we likewise' agree that the appropriate sanction in this case is a one year and one day suspension, with six months deferred. Accordingly, we will adopt the board’s recommendation.
InDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, • and considering the record, it is ordered that Jalila E. Bullock, Louisiana Bar Roll number 28623, be and *993 she hereby is suspended from the practice of law for one year and one day. It is further ordered that six months of the suspension shall be deferred, subject to the condition that any additional misconduct by respondent within six months from the finality of this judgment may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
HUGHES, J., dissents for the reasons assigned by Justice Clark and Justice Crichton.

. Respondent has been ineligible to practice law since September 9, 20 í 5 for failure to pay her bar dues and the disciplinary assessment and for failure to file a trust account disclosure form.

. The parties stipulated to the mitigating factor of a timely good faith effort to make restitution or to rectify the consequences of the misconduct, which the board noted is "highly questionable under the facts of this matter.” Nevertheless, citing Torry, supra, the board stated that it is bound to accept the parties’ stipulations,. ■ ■

. In Brown, this court discussed the distinction between malpractice and sanctionable misconduct:
The question of when ordinary legal malpractice becomes an ethical violation is somewhat unclear. Strictly speaking, virtually any time an attorney allows his client's *992 case to prescribe or to become abandoned, it could be said the attorney lacks competence in violation of Rule 1.1 and failed to act with diligence in violation of Rule 1.3. However, as a practical matter, disciplinary sanctions are not always appropriate in every instance in which an attorney commits minor violations of the Rules of Professional Conduct. , In re: Hartley, 03-2828 (La.4/2/04), 869 So.2d 799. When significant discipline has been imposed in this context, the cases typically involve situations in which the malpractice is combined with additional misconduct, such as where the attorney acts with deceit or misrepresents facts in an effort to conceal the malpractice from the client. See, e.g., In re: Blanson, 05-2561 (La.6/2/06), 930 So.2d 943 (attorney suspended for three years for allowing a suit to become abandoned and falsely assuring the client the suit was still pending when it had been dismissed).

. See, e.g., In re: Cade, 15-0803 (La.6/19/15), 166 So.3d 243 (attorney suspended for one year and one day, with six months deferred, for allowing a personal injury matter to be dismissed as abandoned and failing to inform his client about the dismissal); In re: August, 10-1546 (La. 10/15/10), 45 So.3d 1019 (two-year suspension, with all but sixty days deferred, imposed upon an attorney who allowed a wrongful death action to prescribe, misled her client about the prescription, and failed to withdraw from the matter after being sued for malpractice by the client); In re: Southall, 97-3221 (La.5/8/98), 710 So.2d 245 (one year and one day suspension, with six months deferred, followed by a one-year period of supervised probation, imposed upon an attorney who agreed to represent clients in a legal matter, but negligently failed to conduct settlement negotiations, timely file suit, or keep her clients informed of the status of the matter); In re: Elbert, 97-1303 (La.9/5/97), 698 So.2d 949 (one-year suspension, with six months deferred, followed by a two-year period of supervised probation with conditions, imposed upon an attorney who failed to communicate a settlement offer to his clients and then monetarily settled his liability without advising his clients to seek independent legal advice).